## SIMULATED PAYMENT OF A STOCK SUBSCRIPTION.

Circuit Court of Lorain County.

C. E. VANDEUSEN, TRUSTEE, v. E. M. RANSOM.

Decided, December 2, 1912.

*Corporations—Stockholder's Liability for Unpaid Subscriptions Not Defeated by Any Device Short of Payment.*

Capital stock or shares in a corporation, especially the unpaid subscriptions to such stock, constitute a trust fund for the benefit of creditors, which can not be defeated by simulated payment of the stock subscription or by any device short of actual payment; hence, where a subscriber to stock in a corporation pays only 80 per cent. of its par value and a board of trade is credited with a commission of 20 per cent. for procuring the purchaser, which 20 per cent. is immediately assigned by the board of trade to the purchaser, according to a pre-existing agreement, such transaction is not a valid payment of the 20 per cent. as against creditors of the corporation or a trustee in bankruptcy.

*White, Johnson & Cannon*, for plaintiff in error.
*G. A. Resek* and *L. B. Fauver*, contra.

NIMAN, J.; MARVIN, J., concurs; WINCH, J., dissents.

The plaintiff in error is the trustee in bankruptcy of the National Steel Products Company, a corporation. He was plaintiff in the action below, the action there being brought to recover the balance claimed to be due on the defendant's subscription

to the capital stock of said the National Steel Products Company.

The evidence establishes the fact that the defendant subscribed for fifty shares of the capital stock of the National Steel Products Company and agreed to pay therefor the sum of $100 per share, which was the par value of the stock, but that in fact he actually paid only $80 per share. The difference between the par value and the price actually paid for the stock was sought to be recovered in the original action.

To defeat the plaintiff's claim, the defendant relied upon an affirmative defense, stated in the second amended answer, in the following language:

"Further answering, and for a second defense to the petition of plaintiff, this defendant says that on or about the 17th day of September, 1909, said the National Steel Products Company attempted to increase its capital stock from $25,000 to $50,000 and at said time said company was insolvent and had no working capital, and was unable by reason thereof to sell or place any of said additional capital stock; that the officers attempted to raise capital by obtaining subscriptions to its capital stock, but were unable to secure any subscribers; that at said time there was in existence in the city of Lorain an industrial organization known as the board of commerce, which board was composed of the leading business men, bankers and professional men of the city of Lorain; that said company, as a final resort in its efforts to obtain subscriptions, enlisted the services of the industrial committee of said board of commerce and entered into an agreement with said board of commerce whereby said board of commerce agreed to obtain subscriptions for said second issue of said stock, and said company agreed to pay said board of commerce for said services the sum of $20 per share for all subscriptions secured; that the said services of the said board of commerce were reasonably worth said sum of $20 per share.

"This defendant further says that he subscribed for fifty shares of the capital stock of said company under an agreement whereby this defendant was to pay for said stock the sum of $100 per share, of which $80 per share was to be paid in cash, and $20 per share in commissions earned by the board of commerce and assigned by said board of commerce to this defendant; that this defendant paid the sum of $80 per share in cash, and the board of commerce assigned to this defendant said commissions of $20 per share, thereby relieving said company from the payment of said commissions to said board of com-

merce, and credited this defendant with said commissions, and that this defendant is not indebted in any amount whatever to said company or to plaintiff herein, by reason of said stock subscription.''

This defense was controverted by the plaintiff; the defendant assumed the burden on the trial of the action, and at the conclusion of his evidence the court overruled a motion made by the plaintiff to direct a verdict, which motion was renewed at the close of all the evidence, with like ruling by the court. The verdict was for the defendant. To reverse the judgment entered thereon, the plaintiff in error prosecutes this action.

It is contended on behalf of the plaintiff in error that the proof of the alleged contract between the National Steel Products Company and the board of commerce, and of the rendition of services by the board of commerce in selling the stock purchased by the defendant, is insufficient to support the contract; that the agreement relied upon by the defendant, even if made as claimed, is a mere device to enable the company to sell its stock at less than par, and made for the purpose of enabling the defendant and other purchasers of stock to avoid further liability, and therefore void as against creditors who are represented here by the trustee in bankruptcy; that the board of commerce of the city of Lorain being a corporation not for profit, could not make a contract for commissions and agree to sell stock and receive profit therefrom, even though such commissions were assigned to purchasers of stock.

The board of commerce is a corporation not for profit, having for its object the advancement of the commercial and industrial welfare of the city of Lorain.

We are not prepared to hold, as a matter of law, that it would be beyond its powers to enter into a contract with a corporation for the purpose of assisting in the sale of the stock of the company, for the purpose of promoting the general industrial growth of the city and giving to purchasers of stock the commissions contracted for, providing it was reasonably fair and the contract entered into in good faith and not for the mere purpose of enabling those who might subscribe for stock to pur-

chase the same at less than par and avoid further liability thereon.

There was evidence in this case which required the submission of the issues to the jury, and the trial court did not err in overruling the motion of the plaintiff to direct a verdict. A consideration of all the evidence, however, convinces us that the verdict is not sustained by sufficient evidence.

The arrangement entered into between the board of commerce, or the industrial committee representing the board, and the National Steel Products Company, strongly suggests the inference that it was intended to provide thereby a device whereby stock of the company could be sold at $80 per share to all who might desire to purchase, regardless of the services rendered by the board of commerce in making sales, and to protect purchasers against further liability if they should ever be called upon to pay the remaining $20 per share.

It appears that the company, which was in the manufacturing business and located in the city of Lorain, being desirous of increasing its capital stock, sought the assistance of the board of commerce of said city in selling additional stock. The president of the board of commerce was first approached by officers of the company, who proposed to him that if he would use his influence in putting $20,000 of the company's stock on the market, he should receive as compensation the sum of $2,000. This proposition was rejected by the president of the board of commerce but the matter was referred to the industrial committee of the board. As a result of the action of the industrial committee, the assistance of the board of commerce was secured in placing the company's stock on the market, and an arrangement was made whereby a commission of 20% of the par value of the stock was to be, in form at least, paid to the board of commerce, but in fact this commission was never paid, but was credited on the subscriptions of those who took stock. The company issued a prospectus which, after setting forth various information concerning the company and its affairs, contains this language:

"Stock is offered at a net price of $80 per share, this basis having been arrived at in conference between the management

of the company and the industrial committee of the board of commerce, as a fair adjustment between the present and the prospective stockholders. An adjustment between the par value of $100 and the net price of $80 per share will be made by way of a commission, which will be refunded to the subscribers so that they will be relieved of any liability in the future for what would otherwise be an unpaid portion of the par value of the stock.''

If the transaction between the company and the board of commerce was designed merely to furnish a plan whereby those who subscribed for stock and obtained the same at less than par, might be relieved of further liability thereon, the law is such that such transaction can not be interposed as a defense to an action brought by the trustee in bankruptcy for the company. The law is well established that, although an issue of stock is for cash under an agreement that only part of the par value need be paid, yet corporate creditors or their representatives may compel the persons receiving the stock to pay the unpaid par value. As between the corporation and the stockholder, the agreement would be good, but where the rights of creditors of the corporation are involved, such agreement constitutes no defense in an action for the unpaid balance of the subscription.

*Sawyer* v. *Hoag, Assignee,* 84 U. S., 610, is typical of numerous decisions. It was there held:

''Capital stock or shares of a corporation, especially the unpaid subscriptions to such stock or shares, constitute a trust fund for the benefit of the creditors. This trust can not be defeated by a simulated payment of the stock subscription, nor by any device short of an actual payment in good faith. An arrangement by which the stock is nominally paid and the money immediately taken back as a loan to the stockholder, is a device to change the debt from a stock debt to a loan, and is not a valid payment as against creditors of the corporation, though it may be good as between the company and the stockholder.''

There is some evidence here that the board of commerce, or some of its members, had some influence in inducing the defendant to subscribe for his stock, but in view of what seems to us the manifest character of the arrangement, we think that this evidence and other evidence offered on the subject of the reason-

able value of the services in obtaining subscriptions to stock of the corporation, are insufficient to sustain the verdict, and that the motion of the plaintiff for a new trial should have been granted on the ground that the verdict is not sustained by sufficient evidence, and for error in overruling said motion, the judgment is reversed and the cause remanded for further po-ceedings according to law.

This opinion and the result herein indicated represent the views of a majority of the court.